IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BILL LIETZKE, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   CIVIL ACTION NO. 2:07cv932-WKW |
| CITY OF MONTGOMERY, *et al.*, | ) ) ) |
|     Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Presently pending before the court is Plaintiff's Complaint (Doc. #1) and Motion to Proceed *In Forma Pauperis* (Doc. #2). The court finds that the Motion to Proceed *In Forma Pauperis* is due to be granted. For the reasons that follow, the court DISMISSES *with prejudice* Plaintiff's state criminal claim against defendants as a matter of law. The court also DISMISSES Plaintiff's federal claims under of 28 U.S.C. § 1915(e)(2)(B).[1] Plaintiff's claims alleging incidents prior to July 13, 2007 are dismissed *with prejudice*; his claim alleging an incident on July 13, 2007 or later is dismissed *without prejudice*. Having dismissed the federal claims, the court DECLINES to exercise supplemental jurisdiction over the state civil law claims. Accordingly, the court DISMISSES the complaint without any opportunity for amendment and prior to service of process pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal – (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

I.   **BACKGROUND**

Plaintiff, Bill Lietzke ("Lietzke"), *pro se*, commenced this action on October 2, 2007, in the United States District Court for the Southern District of New York.  That same day, United States District Judge Kimba M. Wood entered an Order transferring the action to the Middle District of Alabama (Doc. #3.)   Lietzke's unsworn complaint asserts a civil rights action under 42 U.S.C. § 1983 for monetary damages and miscellaneous relief.  (Compl. at unnumbered page 23.)   Lietzke names the City of Montgomery, Bobby Bright (Mayor Bright), Mayor of the City of Montgomery, Art Baylor (Chief Baylor), Chief of the Montgomery Police Department, and unnamed City of Montgomery police officers who participated in the events described below,[2] as defendants.  (*Id.* at unnumbered page 1.)[3]  The

---

[2] In general, "fictitious-party pleading is not permitted in federal court." *Edwards v. Ala. Dep't of Corr.,* 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000).  *See also Harris v. Palm Harbor Homes, Inc.*, 198 F. Supp. 2d 1303, 1304 n.6 (M.D. Ala. 2002); *Wiggins v. Risk Enterprise Mgmt. Ltd.*, 14 F. Supp. 2d 1279 (M.D. Ala. 1998); *Floyd v. Allstate Ins. Co.,* 989 F. Supp. 1435, 1436 n.1 (M.D. Ala. 1998).  Some courts, however, have found that, where the name of a specific person whom the plaintiff wishes to join as a defendant is unknown, the plaintiff may substitute an unnamed defendant until the plaintiff is able to discover the defendant's name.  *See Scheetz v. Morning Call, Inc.*, 130 F. R. D. 34, 36-37 (E.D. Pa. 1990) (finding that fictitious parties may be named as defendants in a complaint, based on the plaintiff's inability to identify real parties, until the plaintiff has had reasonable opportunity to discover their identities through discovery). In *Dean v. Barber,* 951 F.2d 1210 (11th Cir. 1992), the Eleventh Circuit held that a *pro se* plaintiff should be allowed to add "Chief Deputy of the Jefferson County Jail John Doe" as a defendant, when the plaintiff indicated that he had not yet received a report from the jail which contained the name of the chief deputy. Here, Lietzke appears to sue the unidentified Montgomery police officers in their official capacities, as agents of the city.  Even if Lietzke added their names, in this capacity, those claims would merge into claims against the City of Montgomery.  For the reasons stated *infra* subsection II.B., Lietzke has failed to state claim upon which relief can be granted.  The court accordingly dismisses all claims against these unidentified individuals.

[3] Lietzke's complaint repeatedly and consistently refers to all defendants, including Mayor Bright and Chief Baylor as "City of Montgomery Defendants." (*E.g.*, Compl. ¶¶ 49-61.)  More specifically, in describing each incident in which Lietzke claims his constitutional rights have been violated, Lietzke sets forth the allegations based upon the agency relationship between unidentified agent police officers and the "City of Montgomery Defendants." (*Id.*)  These facts imply that Lietzke brought this suit against Mayor

2

complaint alleges that defendants violated Lietzke's constitutional rights by subjecting him to harassment, unlawful searches and seizures, and unlawful detentions, and committed a number of state law torts, including assault, false imprisonment, negligence, menacing as well as "first degree criminal trespassing." (*Id.* at unnumbered page 1, ¶¶ 63-65.) Lietzke also claims that defendants have violated his rights to freedom of speech and freedom of assembly. (*Id.* ¶ 64.) Lietzke does not assert any particular claims against any one defendant, but instead, generally alleges all claims against all defendants. These claims arise from 57 incidents, of which only 14 are relevant, between June 1997 to July 2007.[4] (*Id.* ¶¶ 4-61.)

      Specifically, on October 23, 2005, Lietzke claims that police officers falsely imprisoned him and unlawfully arrested him, on the "false charge" that he was flagging down cars, walking in the middle of the street, and trying to stop cars. (*Id.* ¶ 47.) About six weeks later, on December 2, 2005, Lietzke claims defendants, "by and through" their agent police officers, approached the 500 block of South Perry Street, Montgomery, Alabama, to "encounter a suspicious white male who accosted" Lietzke. He alleges defendants proceeded

---

Bright and Chief Baylor in their official capacities. Under the applicable standard of review, the court will construe the allegations in Lietzke's favor and assume that Lietzke intended to bring the action against Chief Baylor and Mayor Bright in their official capacities. *But see McDermott v. Brevard County Sheriff's Office*, No. 07-cv-150, 2007 WL 788377 at *3 (M. D. Fla. Mar. 14, 2007) (construing the complaint as naming defendants in their individual capacity because plaintiffs titled their claim as against "Individual Defendants").

    [4] To the extent Lietzke attempts to raise claims challenging events occurring before October 2, 2005, those claims are barred by the statute of limitations. *See Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994). The court observes that 43 of Lietzke's alleged incidents occurred before that date.

to "harass and bully" him by yelling from the patrol car. (*Id.* ¶ 49.)

Approximately six months later, on or about June 18, 2006, Lietzke claims defendants, "by and through" their agent police officers, approached him at the scene of an automobile accident on South Perry Street and bullied and harassed him when Lietzke watched an injured passenger get placed into an ambulance. Lietzke alleges defendants exclaimed, "Get out of my way." "Get your butt back over there and out of my way." (*Id.* ¶ 50.)

Almost three months later, on or about September 6, 2006, defendants, "by and through" their agent police officers, allegedly harassed Lietzke from the window of a patrol car by asking him where he was "supposed to be." (*Id.* ¶ 51.) That same day, Lietzke claims defendants, "by and through" their agent police officers, parked a patrol car in front of him and his neighbor and harassed them by asking what Lietzke had stated. (*Id.* ¶ 52.)

On September 15, 2006, nine days later, Lietzke claims defendants, "by and through" their agent police officers, startled and harassed him from the window of a patrol car. Defendants, he alleges, approached him "on the one way street opposite traffic, jumped out of the patrol car, and unlawfully detained [him]." Lietzke claims defendants alleged that "some persons called . . . Defendants and stated that . . . [Lietzke] was running in the middle of the street." (*Id.* ¶ 53.)

About three months later, on December 6, 2006, Lietzke asserts defendants, "by and through" their agent police officers, pulled off the interstate, stopped in front of him, and harassed him from the window of a patrol car. Lietzke claims defendants stated "some

persons called . . . stat[ing] that they saw . . . [Lietzke] walking."(*Id.* ¶ 54.) Lietzke further contends that a week later defendants, "by and through" their agent police officers, sped through his neighborhood in seven or more patrol cars and entered a law office where Lietzke was standing. (*Id.* ¶ 55.) The officers, Lietzke claims, grabbed him by the shoulders and arms, handcuffed and dragged him out of the law office. (*Id.*) Once outside, Lietzke claims the officers "continued to taunt, bully, and terrorize" him by slamming his head onto the patrol car and placing him inside the patrol car, but moments later, they released him without charge. (*Id.*)

About a month later, Lietzke contends that, on January 8, 2007, defendants, "by and through" their agent police officers, entered his residence without permission at 3:10 a.m. with their pistols pointed at him. (*Id.* ¶ 56.) He claims the officers shined their flashlights around his residence and for no reason taunted, bullied, and terrorized Lietzke in stating: "Let me see your hands, let me see your hands;" "Get down on the floor; get down on the floor." (*Id.*) Lietzke claims defendants grabbed him inside his bedroom and forced his head to hit the floor. (*Id.*) Lietzke further alleges he was handcuffed during the incident and ordered to state his name. He also alleges the police officers stated that if Lietzke did not state his name, they would take him to jail. (*Id.*) Sergeant "Bruce" then entered Lietzke's residence and told the officers to release him, which subsequently occurred. (*Id.*)

Lietzke also contends that, on January 19, 2007, defendants, "by and through" their agent police officers, "jumped out the[ir] patrol car" near 547 South Perry Street in Montgomery, Alabama, and "beckoned [Lietzke] by hand." (*Id.* ¶ 57.) When Lietzke

5

refused, he claims the officers "followed and stalked" him, grabbed him by the arm, and pulled him to their patrol car, where the officers handcuffed and searched Lietzke while he was forced to place his hands on the car. (*Id.*) Lietzke claims defendants, "by and through" their agent police officers harassed him from the window of a patrol car on March 4, 2007. (*Id.* ¶ 58.) Lietzke claims the officers detained him outside a church, asking him whether he had somewhere to go and telling him that he could not "hang[ ] around the church if [he was not] going in[side] the church." (*Id.*)

Over three months later, on or about June 19, 2007, defendants, "by and through" their agent police officers allegedly harassed Lietzke from the patrol car window. (*Id.* ¶ 59.) Lietzke claims defendants asked him what he was doing. (*Id.*) About two weeks later, on July 1, 2007, Lietzke claims defendants, by and through" their agent police officers, again harassed him from a patrol car window, repeatedly asking him "What are you doing here?". (*Id.* at ¶ 60.) When Lietzke did not respond, he claims defendants continued to harass him. (*Id.*)

Last, on July 13, 2007, Lietzke alleges defendants, by and through" their agent police officers, stopped in front of him, jumped out of a patrol car, and detained him. (*Id.* ¶ 61.) He claims defendants asked where Lietzke was going and stated they received three calls indicating Lietzke was disrupting traffic. (*Id.*)[5]

Lietzke has filed a number of other law suits with similar allegations in district courts

---

[5] Mr. Lietzke is a frequent filer. This allegation is the only one in the complaint that Lietzke has not presented in a previous case.

around the country. There are at least three other lawsuits that involve the incidents alleged in this lawsuit. On June 11, 2007, Lietzke filed a complaint in the Western District of Washington, which was subsequently transferred to the Middle District of Alabama. *Lietzke v. City of Montgomery*, No. 07-588, 2007 WL 2126525 (M.D. Ala. 2007). The complaint in that case is nearly identical to the 24-page complaint filed in this case except that the complaint in this case also describes an incident that occurred on July 1, 2007 (Compl. ¶ ¶ 59-61), avers that the plaintiff has suffered mental anguish as result of assault from the defendants (*id.* ¶ 85), and demands a greater amount of damages (*id.* at unnumbered page 23). In the case filed on June 11, 2007, the court dismissed the June 11, 2007 complaint, specifically dismissing his federal and state law claims without prejudice. *Lietzke*, 2007 WL 2126525.

Lietzke also filed a complaint in the District of Maryland on April 5, 2007, which was then transferred to the Middle District of Alabama. *Lietzke v. Bright*, No. 07-cv-324, 2007 WL 1441200, (M.D. Ala., May 16, 2007). The complaint in that case was substantially shorter, but all of the misconduct alleged in that complaint is also included in this complaint.[6] The court dismissed the plaintiff's complaint for failure to state a claim and because plaintiff does not have an enforceable right to a criminal prosecution. *Id.*

On October 4, 2006, Lietzke filed a complaint in the District of Oregon, which contained some allegations that are included in the current complaint and some that are not.

---

[6] The only other differences between the complaint filed on April 5, 2007, and the complaint at issue here are that Lietzke sought $2,000,000,000 in damages in the April 5 complaint as opposed to $7,000,000,000 here. In the April 5 complaint, he also asked the court to free a West Virginia prisoner.

*Lietzke v. County of Montgomery*, No. 06-cv-1410, 2007 WL 201054 (D. Or. Jan. 22, 2007). The court dismissed that case for lack of personal jurisdiction.

Lietzke has also repeatedly filed other complaints in courts around the country with many returning to the Middle District of Alabama. On October 2, 2007, the same day that Lietzke filed this action, he filed a complaint in the Southern District of New York, which was also transferred to the Middle District of Alabama and subsequently dismissed. *Lietzke v. County of Montgomery*, No. 07-cv-943, 2008 WL 616063 (M.D. Ala. Mar. 3, 2008). On June 11, 2007, Lietzke filed a complaint in the District of Minnesota, which was dismissed for lack of personal jurisdiction. *Lietzke v. City of Montgomery*, No. 07-cv-2706, 2007 WL 2122051 (D. Minn. 2007).[7] On April 24, 2007, Lietzke filed a complaint in the District of Maryland, which was transferred to the Middle District of Alabama. *Lietzske v. McKinney*, No. 07-cv-383, 2007 WL 1589503 (M.D. Ala. June 1, 2007).[8] That complaint was dismissed with prejudice because the complaint was not filed within the allowable period of the statute of limitations and because the plaintiffs were entitled to immunity.

Because Lietzke proceeds *in forma pauperis*, § 1915(e)(2)(B) obligates the court to dismiss a case at any time if it determines that the action or appeal is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

---

[7] The court was unable to view the complaint filed in this case.

[8] The allegations in that complaint are nearly identical to the other complaint that Lietzke filed on October 2, 2007.

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390, 1393 (11th Cir. 1997). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted); *see also Hill v. White*, 321 F.3d 1334 (11th Cir. 2003). Upon review of Lietzke's complaint, and for the reasons that follow, the court finds Lietzke has not presented actionable claims and *sua sponte* dismisses this suit. *See Vanderberg v. Donaldson,* 259 F.3d 1321, 1323 (11th Cir. 2001).

## II. DISCUSSION

A.      **Criminal Trespass Claim against All Defendants**

In his complaint, Lietkze set forth a claim of "first degree criminal trespassing" against all defendants. (Compl. at unnumbered page 23.) This claim is dismissed, as no citizen has an enforceable right to institute a criminal prosecution. *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990). Accordingly, the court dismisses Lietzke's "first degree criminal trespassing" against all defendants.

**B.     Claims against the City of Montgomery**

To the extent Lietzke has sued Mayor Bright and Chief Baylor in their official capacities, he has essentially sued the City of Montgomery. *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1361 (M.D. Ala. 1999) (citing *Kentucky v. Graham,* 473 U.S. 159, 166) (1985) (Official-capacity lawsuits are, "in all respects other than name, . . . treated as a suit against the entity.")); *see also Pompey v. Broward County*, 95 F.3d 1543, 1545-46 n.2 (11th Cir. 1996). The court finds Lietzke has failed to state a claim upon which relief can be granted.

The Supreme Court has placed strict limitations on municipal liability under section 1983. Municipalities may not be held liable for constitutional deprivations on the theory of *respondeat superior*. *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1307 (11th Cir. 2001). It is well-settled that to sue a municipality under § 1983, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005); *see also Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-91 (1978) (holding that a § 1983 action against a governmental body may be brought where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or those "visited pursuant to governmental custom").[9]

---

[9] A "threshold identification of a custom or policy" should initially be made to ensure that a municipality is "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality." *McDowell v. Brown,* 392 F.3d 1283, 1290 (11th Cir. 2004) (quotation and citation omitted).

A local governmental body is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. A custom is a practice that is so settled and permanent that it takes on the force of law." *Cooper,* 403 F.3d at 1221 (quotation and citations omitted). "There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority." *Hyath v. City of Decatur,* No. 04-cv-1135, 2006 WL 825779, at *9 (N.D. Ga. Mar. 28, 2006).

"[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986); *see also Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir. 1994) ("[o]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability."). "State and local positive law determine whether a particular official has final policymaker authority for § 1983 purposes." *Cooper,* 403 F.3d at 1221.

The discussion of these principles in *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994), is helpful. In *Church,* the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church,* 30 F.3d at 1343. To establish the existence of a practice or custom under the second prong, "it is generally necessary to show a persistent and wide-spread practice." *Id.* at 1345 (quotation and citation omitted). Section 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692. Put differently, the governmental policy or custom must be the moving force behind the constitutional deprivation. *Farred v. Hicks*, 915 F.2d 1530, 1532-33 (11th Cir. 1990).

Liberally construing the complaint, Lietzke appears to allege that Mayor Bright and Chief Baylor "have permitted . . . a custom and policy of menacing, negligence, assault and harassment against [him]." (Compl. ¶ 69.) This argument fails as a matter of law for two reasons. First, "[t]he Constitution affords no protection against ordinary negligence, even if that negligence is committed by a public official acting in his official capacity." *Green v. Lisa's Chinese Take-Out*, No. 05-cv-198, 2006 WL 1134131 at *1 (S. D. Ga. Apr. 25, 2006) (citing *Daniel v. Williams*, 474 U.S. 327, 328-32 (1986)); *see also Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 143 (2d Cir. 1981) ("ordinary negligence by itself could

not establish a cause of action under [Section] 1983[.]"). Second, while Lietzke has set forth a series of incidents involving the "City of Montgomery Defendants" "by and through" their agent police officers, Lietzke has failed to allege any facts showing that Mayor Bright and Chief Baylor deliberately chose to menace, assault, or harass him. Rather, Lietkze's claims are based entirely on the agency relationship of Mayor Bright and Chief Baylor with the unidentified Montgomery police officers. As stated above, there is no *respondeat superior* liability under § 1983. *Griffin,* 261 F.3d 1295, 1307 (11th Cir. 2001). Lietzke therefore fails to state a claim as a matter of law.

Moreover, the language of § 1983 plainly requires an affirmative causal connection between the actions taken by the defendant and the constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995). Lietzke also fails to allege any facts in his complaint, which indicate a causal connection between Mayor Bright and Chief Baylor and the acts of the unidentified police officers. Because Lietzke's allegations concern the acts of unidentified individual police officers, it is inconceivable that the City of Montgomery could be liable to Lietzke based on these particular facts. *Cf. City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Based on the foregoing, the court finds Lietkze has failed to state a claim upon which relief can be granted. Lietzke's claims against the City of Montgomery are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     Claims against Mayor Bright and Chief Baylor**

An alternative reason exists for dismissing all claims against defendants Mayor Bright

and Chief Baylor. These claims are based solely upon their status as supervisors. Under § 1983, as discussed above, liability will not be imposed solely on the basis of *respondeat superior* or vicarious liability. *See Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-92 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). Supervisors, like Mayor Bright and Chief Baylor, however, are not wholly immune from suit under § 1983. Supervisory liability attaches only when the supervisor personally participates in the allegedly unconstitutional acts of his subordinates or where the actions of the supervising official bear a causal relationship to the alleged constitutional deprivation. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Braddy v. Fla. Dep't of Labor & Employment Sec.,* 133 F.3d 797, 802 (11th Cir. 1998) (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)).

In this case, Lietkze's complaint fails to allege that Mayor Bright and Chief Baylor personally participated in the incidents alleged. Lietkze's complaint also fails to show that their actions bear a causal relationship to the incidents. The alleged deprivations occurred over a two-year period with repeated gaps of time in between the incidents. For instance, a six-month gap of time occurred between the alleged incident on December 2, 2005, and the

<a>
</a>

one alleged on June 18, 2006. Lietzke alleges no incidents for almost three months following the June 2006 incident. Another three-month gap of time occurred between the alleged incidents on March 4, 2007, and June 19, 2007. These repeated gaps in time suggest that the incidents were isolated occurrences. Moreover, while Lietzke has asserted 14 incidents over a two-year period, only four incidents occurred within a month of each other. Accordingly, Lietkze has failed to set forth facts demonstrating that the alleged deprivations were obvious, flagrant, rampant, and of continued duration. Indeed, three alleged incidents present facts in which the unidentified officers seem to offer Lietzke assistance in response to calls received about his well-being, rather than harass, menace, or assault him. Thus, "a few isolated instances of harassment will not suffice," *Braddy*, 133 F.3d at 802, to constitute a history of widespread abuse sufficient to notify Mayor Bright and Chief Baylor. *Compare Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) (per curiam) ("it is clear that four cases [alleging a prison policy of disregarding committal orders by state court judges] in four years would have been insufficient to put Evans [commissioner of the Department of Corrections] on notice, especially since the record is clear that such matters were handled at lower administrative levels and would not have come to the attention of Evans.") *with Holland v. Connors*, 491 F.2d 539, 541 (5th Cir. 1974) (per curiam) (vacating and remanding for factual development the district court's dismissal of a prisoner's section 1983 complaint alleging that the prison superintendent "was legally responsible for these acts of his subordinates, despite the fact that the Superintendent was not present during the illegal questioning, because such

15

practices were so widespread and had been standard procedure at the institution for so long that he was or must have been aware of them."). As the complaint fails to set forth any facts suggesting that Mayor Bright and Chief Baylor had notice of the alleged constitutional deprivations, the court dismisses Lietkze's claims against them.

Lietzke's claims arising prior to July 7, 2007, have been previously dismissed with prejudice. Lietzke presented these claims to the Middle District of Alabama in a nearly identical complaint, and the court dismissed them on the same grounds that they are being dismissed here. *See Lietzke v. City of Montgomery*, No. 07-cv-588, 2007 WL 2126525 (M.D. Ala. July 23, 2007). Because Lietzke continues to file these claims in courts around the country despite the determination that they are frivolous, the court dismisses them with prejudice. The July 13, 2007 claim has not previously been presented to this court. For that reason, the court denies it without prejudice.

D.      **Civil State Law Claims Against All Defendants**

To the extent Lietzke alleges state law claims, they will be dismissed. If the federal claims over which the court has original jurisdiction are dismissed, the court may decline to exercise jurisdiction over state law claims. *See* 28 U.S.C. § 1367(c)(3); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002). In view of the dismissal of Lietzke's federal claims, the court declines to exercise jurisdiction over Lietzke's supplemental state law claims and dismisses those claims.

### III. CONCLUSION

For the reasons discussed above, Lietzke's claims are due to be dismissed.

Accordingly, it is the ORDER of the court that:

1.  Plaintiff's motion to proceed in forma pauperis (Doc. #2) is GRANTED.

2.  Plaintiff's complaint (Doc. #1) is DISMISSED without any opportunity for amendment and prior to service of process under 28 U.S.C. § 1915(e)(2)(B). Plaintiff's state criminal claim against defendants is DISMISSED with prejudice; plaintiff's federal claims against defendants alleging incidents that occurred before July 13, 2007, are DISMISSED with prejudice; plaintiff's federal claims against defendants alleging incidents that occurred on July 13, 2007, are DISMISSED without prejudice; and the court DECLINES to exercise supplemental jurisdiction over plaintiff's state law claims.

An appropriate judgment will be entered dismissing this action.

Done this 16th day of May, 2008.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE